IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-02936-MSK-CBS

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, and
THE TRAVELERS INDEMNITY COMPANY OF AMERICA, ,

       Plaintiffs,

v.

THE NORTH RIVER INSURANCE COMPANY; and
UNITED STATES FIRE INSURANCE COMPANY,

       Defendants/Third Party Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,
THE CHARTER OAK FIRE INSURANCE COMPANY, and
VALLEY FORGE INSURANCE COMPANY,

       Third Party Defendants.

_____

OPINION AND ORDER GRANTING, IN PART, AND DENYING, IN PART,
MOTIONS FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to Defendant North River Insurance

Company and United States Fire Insurance Company's (collectively, "USFI")[1] Motion for

_____

[1] It appears to the Court that North River Insurance Company and United States Fire
Insurance Company are affiliated entities, and they appear to assert claims and defenses jointly
in this action.  The policies at issue here were sometimes issued by one entity, and sometimes by
the other, making it necessary for purposes of awarding ultimate relief to differentiate between
them.  However, it is not essential to maintain such differentiation for the purpose of addressing
the particular motions herein, and thus, for efficiency's sake, the Court will treat them as a
single, unified entity.

     The same is true for Plaintiff's St. Paul Fire and Marine Insurance Co. and Travelers

Summary Judgment **(# 77)**, Plaintiffs St. Paul Fire and Marine Insurance Co. and Travelers Indemnity Company of American ("Travelers") response **(# 86)**, and USFI's reply **(# 87)**; Travelers and Third Party Defendant Charter Oak Fire Insurance Company's (who, where appropriate, shall also be deemed included in the collective designation "Travelers") Motion for Summary Judgment **(# 78)**, USFI's response **(# 85)**, and Travelers' reply **(# 89)**; Third Party Defendant Valley Forge Insurance Company's ("Valley Forge") Motion for Summary Judgment **(# 79)**, and USFI's response **(# 84)**; and Third Party Defendant Continental Casualty Company's ("Continental") Motion for Summary Judgment **(# 80)**, USFI's response **(# 84)**, and Continental's reply **(# 88)**.

## FACTS

This is a factually-complex and multi-faceted insurance coverage dispute.  In 1995, Pinkard Construction Co. ("Pinkard") was tasked to build The Legacy Apartments ("Legacy"), a housing complex in Longmont, Colorado.  Pinkard, as general contractor, retained various subcontractors to perform portions of the construction work, among them AJM Framers ("AJM"), United Masonry ("United"), and Shroeder Roofing ("Schroeder").  Construction was completed in or about January 1997.

Shortly after construction was completed, the buildings began showing signs of water leaks and other construction defects.  Legacy notified Pinkard of these defects, and Pinkard performed some repairs.  The time frames in which Legacy notified Pinkard of these problems is somewhat unclear from the instant record, potentially occurring as early as 1997.  It is undisputed that by March1998, an investigation by Schroeder into complaints of water leaks

---

Indemnity Company of America, which the Court will jointly refer to as "Travelers")

revealed defects in the construction in the brick, mortar, and flashing portions of an exterior wall. Schroeder informed Pinkard of its findings in a letter. Pinkard undertook some repairs between 1998 and 2000, but it appears that in or about 2001, it stated to Legacy that it was refusing responsibility for any further repairs.

In 2003, the owners of Legacy commenced suit ("the Legacy action") against Pinkard and United in the Colorado District Court for Boulder County. In the original Complaint in that action, Legacy alleged claims for breach of contract and breach of implied warranty. Pinkard notified its insurers – including USFI and Travelers – of the claims. USFI promptly tendered a defense of the claim under a reservation of right. Travelers denied coverage and refused to tender a defense, contending (among other things) that Legacy's allegations did not implicate "bodily injury or property damage" coverage under the terms of Travelers' policy and that the property damage resulted from defects known to Pinkard at the time Travelers' policies were first written in December 1999.

In 2004, Legacy clarified that its claims were based on the following alleged defects: (i) improper construction of the brick-and-mortar exterior wall; (ii) defects in roof construction; (iii) defective deck beams; and (iv) various defects relating to wood siding and flashing. This prompted Pinkard to file third-party claims against AJM and Schroeder, alleging that their work was the cause of any defects at Legacy making AJM and Schroeder liable to Pinkard. Extensive pretrial proceedings and motion practice followed.

In January 2006, Legacy sought to amend its Complaint to assert an additional claim against Pinkard for failure to make repairs. This prompted Pinkard to again claim coverage under its policies with Travelers, but Travelers again denied the claim and refused to tender a

defense, again finding that the claims still "involve leakage of water into the building from various areas" and that Pinkard was "aware of [the] water infiltration problems, regardless of the cause, prior to the inception of the . . . policies."

In March 2006, the trial court issued a lengthy order addressing a variety of motions. As relevant here, and greatly simplified, the court granted Pinkard's motion for summary judgment on Legacy's claims, finding that such claims were untimely asserted. As a result, the court also granted summary judgment to AJM and Schroeder on Pinkard's derivative third-party claims.

Appeals ensued. In October 2007, the Colorado Court of Appeals affirmed the dismissal of most of Legacy's claims against Pinkard and United, but it reinstated Legacy's claim for breach of the duty to repair and remanded the case for trial on that claim. In a separate order, the Court of Appeals affirmed the dismissal of Pinkard's third-party claims against AJM and Schroeder on timeliness grounds, and, pursuant to the subcontracting agreements, awarded attorney's fees to AJM and Schroeder and against Pinkard. In 2009, Pinkard settled the attorney's fee award with AJM and Schroeder for $ 209,500, that sum being paid by USFI on Pinkard's behalf.

In April 2008, Legacy filed yet another Amended Complaint alleging multiple claims against Pinkard, including a failure to repair claim and claims sounding in negligence. Pinkard once again presented the claims to Travelers, and requested tender of a defense. In September 2008, acknowledging the new claims by Legacy arguably implicated the terms of Pinkard's policies, Travelers agreed to tender a defense. Thus, beginning in or about August 2008, Travelers and USFI began sharing the costs of Pinkard's defense.

The Legacy action proceeded to trial in 2010. While the jury was deliberating, the

4

parties to the action - Legacy and Pinkard - reached a settlement whereby Pinkard agreed to pay Legacy $ 3.4 million.  Of that sum, Travelers contributed $ 1.3 million, USFI contributed $ 1.75 million, Pinkard paid $ 250,000, and one of Pinkard's excess insurers (not a party here) paid $ 100,000.

This action arises out of the settlement. Travelers and USFI each contend that their contributions to the settlement of the Legacy action exceeded their liability under their policies, such that the other is liable to them for some or all of those contributions.  They assert claims against each other sounding in contribution, indemnity, and subrogation.  USFI also seeks contribution from Travelers' for  defense costs from 2003 to 2008.   In addition, USFI asserts claims against Valley Forge (Schroeder's insurer) and Continental (AJM's insurer), alleging that Pinkard was an additional insured on their policies, such that they are obligated to contribute or indemnify USFI for the costs of Pinkard's defense and settlement.   Each of the parties has now moved for summary judgment on the claims by and/or against them.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

5

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment.  "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently."  *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another").

For purposes of efficiency and convenience, the Court will address the various claims based on their subject matter, rather than on a motion-by-motion or party-by-party basis.

**B.  Contribution to USFI's defense costs.**

USFI seeks contribution from Travelers for the costs of defending Pinkard between the commencement of the Legacy action in 2003 and 2008, when Travelers undertook a formal defense of Pinkard..  USFI also seeks contribution from Valley Forge and Continental for the costs of defending Pinkard between 2006, when those insurers apparently ceased contributing to defense costs of Pinkard, and 2010, when Pinkard finally settled with Legacy.  Travelers, Continental, and Valley Forge each seek summary judgment in their favor on USFI's claims.

An insurer owes a duty to defend the insured against any claim for which coverage under the policy might exist; put differently, an insurer is obligated to tender a defense to the insured unless there is no factual or legal basis to conclude that the claimed injury is covered by the policy.  *Hecla Mining Co v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991).

7

The Court determines the potential for coverage by examining the facts as alleged in the underlying complaint, drawing inferences in favor of coverage. *Id.* ("where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim"). To the extent that determination of the scope of possible coverage requires interpretation of policy language, the Court conducts that interpretation as a matter of law. *Id.; Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). However, where there is a factual dispute that bears on the question of whether a particular claimed injury is covered or not, that question must be reserved for the trier of fact. *Hecla*, 811 P.3d at 1089.

First, Travelers, Continental, and Valley Forge all contend that USFI's claims for contribution towards Pinkard's defense costs are barred by the statute of limitations. Travelers argues that its refusal to defend Pinkard was known to USFI as early as 2003, and thus, the three-year statute of limitations in C.R.S. § 13-80-101 began running at that time, expiring in 2006. Continental and Valley Forge contend that USFI knew that they had ceased their participation in Pinkard's defense in 2006, thus starting the three-year limitations period running at that time and expiring in 2009. USFI first asserted its claims against Travelers and Valley Forge in this action in January 2011 (# **6, 9**).

USFI responds that its claim for contribution towards defense costs did not arise and expire. Instead, it  was constantly accruing under the "continuing wrong" doctrine – that "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations

8

begin to run from, the date of the last injury." *Citing Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996) *and MDM Group Assocs. v. ResortQuest Intern., Inc.*, 2007 WL 2909408 (D. Colo. Oct. 1, 2007).  Thus, it contends, its claims for contribution towards defense costs was constantly accruing against the other insurers until the time of settlement with Legacy in 2010, thus rendering its claims in 2011 timely.

The cases USFI cites are plainly inapposite. *Tiberi* was interpreting New Mexico law, *MDM* relies solely on *Tiberi* for its authority, and both predicate a delay in accrual of the plaintiff's claim on the defendant's concealment of relevant information.  *See MDM*, 2007 WL 2909408 at *4 ("The Tenth Circuit has acknowledged application of the continuing wrong doctrine in cases involving 'inculpatory parties who fraudulently concealed their conduct so the plaintiffs were prevented from timely coming forward to seek redress'").

The applicable law, here, is Colorado law. Colorado law recognizes that where a contract "require[s] a series of performances over a period of time" and is "capable of a series of breaches for which a series of actions can be maintained", "generally a new claim accrues for each separate breach" and the plaintiff "may assert a claim for damages from the date of the first breach within the period of limitation." *Neuromonitoring Assocs. v. Centura Health Corp*, ___ P.3d ___, 2012 WL 3518017 (Colo. App. Aug. 16, 2012) (slip op.).  Indeed, one of the cases *Neuromonitoring* cited in reaching this conclusion was *Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co.*, 664 F.2d 252, 256 (10th Cir. 1981), in which the court (then considering Oklahoma law) held that "the insurer's continued refusal to defend the insureds constituted a series of breaches of its contractual obligations" for which "the limitations period runs with each breach."

Cases like *Paul Holt* and *Neuromonitoring* establish that each breach of a contract

9

requiring continuous performance is separately actionable;  each has its own accrual date and limitations period, and a plaintiff can only sue on those breaches that occurred within the relevant limitation period.  *Paul Holt*, 664 F.2d at 256 ("As the limitation period runs with each breach, the insureds are only precluded from recovering those litigation expenses incurred prior to the statutory period"); *Neuromonitoring*, 2012 WL 3518017 at *7 ("the plaintiff may assert a claim for damages from the date of the first breach within the period of limitation").  That is Traveler's situation; it disclaimed any intention to defend the insured on several occasions. Each disclaimer gives rise to a separate breach subject to a separate limitation period.

The Court assumes that USFI's claims against the other parties are in the nature of breach of contract asserted by a third-party beneficiary to the contract. Duties originally owed to Pinkard are now owed to USFI because it paid defense costs on Pinkard's behalf.  As contract-based claims, the three-year statute of limitation of C.R.S. § 13-80-101(a) applies.  USFI first asserted these claims in January 6, 2011.  Thus, USFI can only recover for the other parties' breaches of the duty to contribute towards defense costs that occurred in or after January 2008.[2]

Having defined the temporal scope of USFI's claim for contribution towards defense costs, the Court turns to its effect.  Travelers, Continental, and Valley Forge each argue that their policy coverage – and thus, their duty to defend – was not triggered by the allegations by Legacy

---

[2]The Court summarily rejects Travelers' argument that USFI waived its right to contribution towards defense costs during some of this period.  That argument is based on a USFI's employee manifesting consent to a request by the attorneys representing Pinkard to begin splitting their billings between USFI and Travelers as of August 15, 2008.  Travelers contends that this constituted a voluntary relinquishment of USFI's right to seek contribution from Travelers for past defense costs already incurred and paid by USFI.   This argument is patently without merit.

in January 2008 because Legacy was only alleging claims of faulty workmanship.[3]  They

contend that their policies' language only insured Pinkard for property damage resulting from an

"occurrence," which the policies define as "an accident," and that claims for faulty workmanship

are not "occurrences."  *Citing Union Ins. Co. v. Hottenstien*, 83 P.3d 1196, 1201 (Colo. App.

2003) ("A breach of contract is not generally an accident that constitutes a covered occurrence").


USFI responds that this argument should be rejected in accordance with a recent decision

from the 10th Circuit, *Greystone Const. Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272,

1282 (10th Cir. 2011),  That case attempted to predict how the Colorado Supreme Court would

rule on the question of whether the term "occurrence" in a standard general liability policy

encompasses "unforeseeable damage to nondefective property arising from faulty workmanship."

The 10th Circuit concluded that Colorado law would deem an "occurrence" to include claims

alleging such damage.  *Id.*, This would appear to encompass Legacy's claims in its 2003

Complaint, insofar as it alleged that the apartment buildings were damaged as a result of

Pinkard's "fail[ure] to construct the Legacy Apartments . . . in a workmanlike manner."[4]  *Docket*

---

[3]The Court concedes that its adjusting of the dates at issue – from 2003 (when the Legacy action commenced) or 2006 (when Continental and Valley Forge ceased contributing to the defense) to January 2008 (the earliest date on which USFI's contribution claim can be asserted) – tends to distort the arguments in the parties' briefs somewhat.  Obviously, the state of the Legacy action in January 2008 is different from the state it was in as of 2003 or 2006, but the parties' arguments focus on the latter dates, not the former.  Nevertheless, because, as addressed below, the Court does not find the matter suitable for resolution on summary judgment in any event, the parties will have an additional opportunity to clarify how their arguments relate to Legacy's claims as they existed in 2008.

[4]It appears to this Court that the fact that Legacy presented its faulty workmanship claim in the form of a breach of contract claim, rather than a claim for negligence or some other tort theory, does not affect the application of *Greystone*.  The focus of *Greystone* is not on the

# 78, Ex. 1, ¶ 7.

The parties' briefing leaves the Court at a point from which it is unwilling to proceed without further guidance.  *Greystone* was decided only a few weeks before the parties' briefing on the instant motions, depriving the parties of an opportunity to carefully study its teachings. But clearly the contention that Legacy claims were not  "occurrence (s)" (or "event(s)") under policy definitions simply because they were not "accidental" is no longer colorable post-*Greystone*.[5]  The parties have not yet addressed the effect that this Court should give a 2011 resolution of a legal issue when evaluating a denial of a defense by an insurer in January 2008. USFI's argument that *Greystone* affects the outcome of its claims for defense costs raises numerous issues of law, including the retroactive application of *Greystone*, the timeframe from which the Court should assess the legal[6] aspects of a duty to defend, or possibly even issues of Traveler's *mens rea* in 2008 (*e.g.* whether it must show that its inquiry into the legal question was reasonable or well-informed, etc.).  The Court's limited *sua sponte* research into these and related questions has not yielded immediate and clear guidance, and thus, the Court declines to proceed further without first offering the parties an opportunity to sharpen the issues and supply

---

particular legal theory being asserted by the injured party, but rather, on the question of whether damage resulting from faulty workmanship can be deemed "accidental."

[5]Or, at least, not colorable in federal court.  It appears that the Colorado Court of Appeals continues, post-*Greystone*, to hold that "allegations of poor workmanship constituting a breach of contract and do not fit within the reasonable meaning of an 'accident.'" *TCD, Inc. v. American Family Mut. Ins. Co.*, ___ P.3d ___, 2012 WL 1231964 (Colo. App. Apr. 12, 2012) (slip op.). Nevertheless, unless and until the Colorado Supreme Court dispositively addresses the issue, this Court is bound to apply the law as interpreted by the 10th Circuit.

[6]Cases such as *Hecla* make clear that the Court addresses the <u>factual</u> basis of the underlying claims on the face of their pleadings, but it does not address whether the Court examines those factual contentions under the historical legal regime in effect at the time or under the law as it presently exists.

12

citations to relevant precedent.

Continental and Valley Forge make an additional argument: that the specific terms of their policies, including the "your work" and faulty workmanship exclusions, applied such that the policies did not cover the property damage claimed by Legacy. The Court discusses a similar argument made by both Travelers and USFI below, finding that the factual record before the Court is not sufficiently clear for the Court to adopt such arguments. Incorporating that discussion, the Court thus rejects Continental and Valley Forge's request for summary judgment on USFI's claims for defense costs.

Accordingly, to the extent the parties seek summary judgment on USFI's contention that Travelers, Continental, or Valley Forge is obligated to contribute to the costs of Pinkard's defense of Pinkard after January 2008, the Court denies the requests for summary judgment, without prejudice to the parties filing a new summary judgment motion that addresses the peculiar issues created by *Greystone*'s recent modification of the legal analysis that underlies the coverage issue.

### C.  Contribution to settlement of the Legacy action

USFI and Travelers both contend that their contributions to the settlement of the Legacy action exceeded their liability under their policies, and thus seek contribution or indemnity from each other for those amounts.[7]  USFI also seeks contribution towards that settlement from Continental and Valley Forge on Pinkard's behalf.

---

[7]Travelers concedes that a portion of that settlement relating to deteriorating mortar and rotting deck beams, does fall within its policies' terms.  It contends that no more than $ 225,000 of the settlement amount can be attributed to these items of damage, and thus, it seeks contribution or indemnity from USFI only in the amount of $ 1,075,000, rather than the $ 1.3 million it paid towards the Legacy settlement.

It is not necessary to thoroughly recite each of the theories upon which each party claims that their policies did not cover Legacy's claims.  It is enough to note that Travelers largely contends that its policies with Pinkard contained limitations on coverage for property damage that was "known to" Pinkard as of the inception of the policies in December 1999, and that all of the property damage claimed by Legacy falls within that category.  USFI argues that the effect of the Court of Appeals' ruling was such that the only items of damages Legacy could pursue were those arising after USFI's coverage had terminated in November 1999.  Valley Forge and Continental make similar arguments (their coverage of AJM and Schroeder, and thus their derivative coverage of Pinkard, terminated in July 1997), as well as contend that the damage claimed by Legacy was excluded from coverage by other provisions in the policies.

Because no factual determinations were made in the state court, the underlying cause and knowledge of the defects was not determined.  The parties have not stipulated to such facts and there are disputes as to both.  Travelers' invocation of its "known to" exclusions, as well as Continental and Valley Forge's invocation of their own policy exclusions, turn on questions of fact – *e.g.* whether the property damage claimed by Legacy was (or was not) caused by particular defects of which Pinkard had (or did not have) notice at a particular point in time.  In order to find no genuine dispute of material fact, such that the Court could grant summary judgment in favor of these insurers, the Court would have to find that the record in this case unambiguously demonstrates that Legacy's injuries were not caused by particular defects known to Pinkard at a certain time.

Despite diligently reviewing the briefs and citations to evidence[8] by all parties, the Court is unable to state with any certainty precisely <u>what</u> items of property damage Legacy claimed at trial to have suffered, nor is this Court able to conclusively state that those items of property damage were caused by any particular construction defect, much less determine when that defect first manifested itself.  Presumably, all of these issues were addressed in detail during the state court trial, but the parties here have cited to only a few pages of generalized trial testimony or brief conclusory affidavits. Certainly, there is evidence that Pinkard was aware of certain leaks and resultant damage in certain locations in 1998 or earlier (*e.g.* the Schroeder letter and admissions in the affidavit of Mark Olesen), and there is evidence that Legacy's claims included various elements property damage, including mortar deterioration, moisture intrusion.  (*e.g.* trial testimony by Don Macy and Barbara Briggs).

The parties have not supplied the Court with evidence (much less undisputed evidence) that would allow the Court to correlate, positively or negatively, the leaks and other defects identified to Pinkard in 1997 or 1998 and the property damage claimed by Legacy.  The parties have not, for example, pointed the Court to experts opining that the moisture intrusion damage claimed by Legacy is traceable to the same water leaks identified to Pinkard in the Schroeder letter, or opining that the source of that damage is some other defect that was utterly unknown to Pinkard until some later time.  Accordingly, the Court finds that the record herein is not sufficiently specific to permit the conclusion that Travelers, Valley Forge, or Continental are

---

[8]The parties have sometimes submitted the full trial testimony of certain individuals, despite citing to only a page or two of documents that sometimes exceed 100 pages.  Given the volume of motions, briefing, and exhibits submitted by the parties, the Court is forced to strictly limit itself to reviewing only those portions of lengthy exhibits to which the parties have specifically cited, and the Court has thus not reviewed the entirety of these lengthy exhibits.

entitled to summary judgment in their favor on USFI's claims (or on Travelers' own claim

against USFI) for contribution towards the Legacy settlement.

USFI's request for summary judgment on its own claim against the other insurers for

indemnification towards its own contributions to the settlement is based on a different theory.

USFI argues that the effect of the Court of Appeals' dismissal of some of Legacy's claims on

timeliness grounds, and its articulation of the duty to repair claim that was ultimately allowed to

proceed, precludes any possibility that the injuries claimed by Legacy could be attributable to

conduct by Pinkard during USFI's coverage period, which terminated in November 1999.  To

the extent USFI urges this argument as a legal one – *i.e.* the Court of Appeals' ruling means, as a

matter of law, that the only actionable conduct by Pinkard occurred after November 1999 – the

Court finds that argument unavailing.  The Court of Appeals found a duty to repair claim was

timely because the parties had agreed that Pinkard would repair any defects that Legacy gave

notice of within a year of the buildings' completion (*i.e.* within one year of January 1997); that

Legacy complained of various defects, including water leaks, during that period; and that

Pinkard failed to completely resolve those issues.  Assuming that those defects were indeed the

cause of the damages that Legacy attempted to prove at trial (and, as noted above, the Court

cannot make or reject that assumption on the sparse record before it), the failure to repair claim

would encompass conduct by Pinkard during the period of USFI's coverage, thus preventing

summary judgment in favor of USFI on its claim for indemnification for its contribution to the

Legacy settlement.

Accordingly, the Court finds that based on the record submitted, no summary judgment

determination can be made.  An allocation of the amount of settlement cost will have to await

trial in this matter.

### D.  Contribution to attorney's fee awards

USFI asserts claims against Travelers for contribution towards payments USFI made on Pinkard's behalf in satisfaction of court orders awarding attorney's fees to AJM and Schroeder. As noted above, these fees were awarded to the subcontractors upon the dismissal of Pinkard's third-party claims against them.  Travelers seeks summary judgment on this claim, alleging that the fees assessed against Pinkard are not covered by Travelers' policies.

Travelers contends that it is obligated to cover costs assessed against its insureds pursuant to policy language that requires it to do so in "any 'suit' against an insured we defend" or in "any claim or suit under this agreement against a protected person."  It points out that the key language here is "against," and that Pinkard's third-party claims against AJM and Schroeder were not claims against Pinkard.

USFI's response to Travelers' motion does not offer any meaningful response to Travelers' argument.  USFI simply asserts, without citation to law or the record, that "Travelers . . . owed an obligation under their policies to contribute to the settlement of claims of AJM . . . and Schroeder's attorney fees claims against Pinkard."  USFI does not elaborate.

The Court finds that there is no meaningful dispute that the policy language relevant to this issue is that identified by Travelers, and that the language unambiguously applies to claims against an insured like Pinkard.  Because it is undisputed that the fees in favor of AJM and Schroeder were awarded on unsuccessful third-party claims brought by Pinkard, the award of fees does not fall within the terms of Travelers' policies.  Accordingly, Travelers is entitled to summary judgment on USFI's claims that Travelers is obligated to contribute to the settlement of

AJM and Shroeder's attorneys fee award.

## CONCLUSION

For the foregoing reasons, USFI's Motion for Summary Judgment **(# 77)** is **DENIED**. Travelers' Motion for Summary Judgment **(# 78)** is **GRANTED IN PART**, insofar as Travelers (and its associated entities) is entitled to summary judgment on USFI's claim for contribution or indemnification relating to its payment of the attorney's fee award assessed against Pinkard and in favor of AJM and Schroeder, and **DENIED IN PART** in all other respects.  Valley Forge's Motion for Summary Judgment **(# 79)** and Continental's Motion for Summary Judgment **(# 80)** are **DENIED**.  Counsel shall jointly contact chambers as soon as practicable to schedule a Pretrial Conference and shall proceed with preparation of a Proposed Pretrial Order in accordance with Docket # 50.

Dated this 26th day of September, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge